# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **RYAN J. SINK,** | ) | **CASE NO. 7:18CV00350** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **L. WANG, ET AL.,** | ) | **By: Hon. Glen E. Conrad** |
| | ) | **Senior United States District Judge** |
| **Defendants.** | ) | |

The plaintiff, Ryan J. Sink, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials have provided him with inadequate medical treatment for neck and shoulder pain. Presently before the court are a motion to dismiss and a motion for summary judgment, filed by different groups of defendants. After review of the record, the court concludes that the motion for summary judgment must be denied, and the motion to dismiss must be granted in part and denied in part.

## I. BACKGROUND.

Sink is incarcerated at Green Rock Correctional Center ("Green Rock"). In mid-July 2017, Sink started to experience sharp pain in his neck, shooting down his arm, and shortness of breath.[1] Fearing a heart attack, he went the medical unit. A nurse assessed him and sent him back to his housing unit without providing treatment for the new condition, but referred him to see prison physician, Dr. L. Wang. Sink "complained daily during this wait about the amount of pain" he was suffering to the medical staff and to Green Rock Warden M. Davis. Sink Aff. 2, ECF No. 1-2. The warden advised Sink that the prison doctor would determine the appropriate treatment for Sink's medical complaints.

---

[1] This summary of facts, taken in the light most favorable to Sink, is taken from Sink's amended complaint, grievances and other documents attached to his pleadings, and two Sink affidavits ("Sink Aff."). See ECF Nos. 1-2, 21, 58-1, 58-2.

Sink saw Dr. Wang on July 25, 2017. The doctor diagnosed Sink as having a pulled muscle and prescribed pain medication for seven days. Sink continued to complain daily of his pain.

On the morning of August 7, 2017, Sink was transported to the medical unit in a wheelchair, complaining of severe pain in his neck and shoulder that limited his ability to stand or walk. Because of Sink's behavior in the medical unit, security officers moved him to a segregation unit for several hours. Once he was returned to the medical unit about 12:30 p.m., he was admitted to medical isolation. Sink alleges that he was not examined by a nurse or provided any treatment until early the next morning, when a nurse provided him with Tylenol. Nurse Autry was the charge nurse on August 7, 2017.

In response to Sink's informal complaint about this incident, an official responded,

> According to your medical record, you came into medical on 8.7.17 demanding to receive treatment for shoulder pain. . . . At the time, you were already on Neurontin 400 mg twice daily for pain.[2] The nursing staff was aware of your complaint during their shift and were able to observe you once you had been placed in the isolation cell. The night nurse did vital signs and an assessment at approximately 0541 the following morning. Dr. Wang saw you the following morning and ordered X-Rays, pain medication, and steroids. You were released to the general population later that day.

Am. Compl. Attach. 2, ECF No. 21-1. Sink filed a regular grievance on these issues, triggering an investigation. The Level I response verified the validity of the informal complaint response, but because the investigation reflected that unspecified procedures or policies were not followed, Sink's grievance was deemed "Founded." Id. at 4.

At the appointment with Dr. Wang on August 8, 2017, Sink begged to be taken to the hospital and complained that his arm was going numb and he was losing strength in it. Dr. Wang told Sink that he "needed to quit exaggerating, and that faking would not get [him] anywhere."

---

[2] Sink asserts that the medical staff had previously prescribed Neurontin for diabetic neuropathy in his feet.

Sink Aff. ¶ 5, ECF No. 58-2.  The doctor again diagnosed Sink with a pulled muscle and ordered medication and X-rays.

On August 10, 2017, Sink received a report in the mail, stating that the X-ray results were "acceptable."  Id. at ¶ 6.  He continued to file request forms, complaining of pain, and his mother called prison officials with similar reports.

On August 17, 2017, Dr. Wang saw Sink for complaints of continued pain and loss of mobility in his arm.  Dr. Wang noted that the X-ray results "were fine," that Sink was exaggerating his symptoms, and that "there was no way [Sink] was still in pain."  Sink Aff. 4, ECF No. 1-2.  The X-ray report from August 8, 2017, states:  "There is disc space narrowing and spur formation and C5-C6 due to degenerative disc disease.  There is some straightening of cervical curvature.  No other abnormality evident."  Mem. Opp'n Mot. Summ. J. Ex. 1, ECF No. 58-1.

On August 25, 2017, Sink saw the physical therapist, who indicated that Sink's pain was related to a nerve in his neck.  The therapist sent his written findings back to the prison with Sink.  Sink also had his mother and his lawyer call the prison to plead for prompt treatment of his pain.

Dr. Wang saw Sink again on August 28, 2017.  Sink stated that his arm was numb, and he was barely able to use it.  In response, Dr. Wang increased Sink's Neurontin dosage and ordered an MRI.  See Am. Compl. Attach. 11, ECF No. 21-1.  Sink asked Dr. Wang to send him to a hospital, and the doctor told him to "stop asking."  Sink Aff. 5, ECF No. 1-2.

Between July 25 and August 29, 2017, Sink had four conversations with Warden Davis about the treatment he had been provided and the seeming indifference of the doctor and nurses.  Each time, the warden said that he did not control "medical" and could not "make the doctor

send [Sink] out." Sink Aff. ¶ 7, ECF No. 58-2. Sink also filed request forms to the warden, and

his mother called Davis several times, only to receive similar responses from him. In addition,

Sink's mother left messages for the Virginia Department of Corrections ("VDOC") Health

Services Chief Physician, Dr. M. Amonette, complaining that Dr. Wang and the medical staff at

Green Rock were not providing Sink with proper treatment. She received no response.

On September 8, 2017, the physical therapist was shocked that nothing had been done for

Sink's condition. The therapist promised to make clear in his written report that Sink needed to

see a neurosurgeon. At the physical therapy appointment on September 14, 2017, the therapist

restricted Sink's movement. The next day, Sink underwent an MRI. He continued to complain

to the medical staff of pain. At physical therapy on September 21, 2017, the therapist again

restricted Sink's movement.

On September 25, 2017, Dr. Wang discussed with Sink the results of the MRI, stating

vaguely that "it looks like a pinched nerve." Sink Aff. 6, ECF No. 1-2. The doctor then referred

Sink to a neurosurgeon. At another visit on October 8, 2017, Dr. Wang prescribed Flexeril, a

muscle relaxer, to treat Sink's condition while he waited to see the specialist.

On October 30, 2017, Sink was evaluated at a neuroscience center, where a specialist

explained that Sink had two pinched nerves and two slipped discs, with one disc pressing on his

spinal cord. The specialist prescribed Diclofenac, but Dr. Wang did not order this medication for

Sink.

At a surgery consultation on November 16, 2017, Dr. McCleary, the neurosurgeon, stated

that the X-ray findings of changes in C-5 and C-6 were consistent with the pinched nerve

diagnosis; this X-ray was the same one that Dr. Wang had found acceptable. Dr. McCleary

again prescribed Diclofenac. The prison medical staff did not fill this prescription for Sink. On

December 20, 2017, Sink underwent surgery. Two discs were removed from his neck and two plates and some donor bone were installed to fuse part of his spine.

In March and April of 2018, Sink complained of post-surgical complications—continued weakness and numbness in his arm and sensitivity in his fingertips. On April 17, 2018, Sink saw Dr. McCleary about these issues. The doctor explained, "I couldn't stop it. I could only prevent it from progressing." Sink Aff. 7, ECF No. 1-2. Sink told Dr. McCleary about pain he was having while sleeping and asked if a pillow could relieve this pain. Dr. McCleary prescribed a "cervical pillow/wedge to reduce or alleviate the pain." Id. at 7-8. Dr. Wang "ignored this order, along with the order for an elbow pad for a lesion of the ulnar nerve." Id. at 8.

On April 25, 2018, Sink asked Dr. Wang about the pillow Dr. McCleary had ordered and explained the pain that he was suffering. Dr. Wang refused to order the pillow or any other pain relief and stated that he would reevaluate after a second MRI. The MRI in May 2018 showed abnormalities, but Dr. Wang continued to refuse Sink's request for the pillow to alleviate his pain, despite numerous requests and complaints. After Sink saw Dr. McCleary again on June 1, 2018, the neurosurgeon notified Dr. Wang that "a cervical pillow may be a reasonable accommodation of the mechanical pain" Sink was suffering as a result of arthropathy and degenerative disc disorder. Id. at 9. Still, Dr. Wang refused to order the pillow.

Sink filed his amended § 1983 complaint in January of 2019. He named as defendants Dr. Wang, Nurse Autry, Warden Davis, VDOC Medical Services Director S. Herricks, and Chief Physician Dr. Amonette. Sink alleges that Davis, Herricks, and Amonette knew from Sink's verbal complaints, grievances, or appeals about his alleged need for different or more prompt medical treatment, but they failed to take steps to ensure that he received it. Davis, Herrick, and Amonette have filed a motion for summary judgment, arguing that Sink failed to exhaust

administrative remedies as to his claims against them. Dr. Wang and Nurse Autry have filed a motion to dismiss for failure to state a claim. Sink has responded to both motions, making them ripe for disposition.

## II. DISCUSSION.

### A. The Exhaustion of Administrative Remedies.

A prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. 42 U.S.C. § 1997e(a). This exhaustion requirement is "mandatory." Ross v. Blake, __U.S.__, 136 S. Ct. 1850, 1856 (2016). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure available at the facility before filing his § 1983 action. See Woodford v. Ngo, 548 U.S. 81, 90-94 (2006).

Operating Procedure 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a). See gen. Mem. Supp. Mot. Summ. J. Massenburg Aff., ECF No. 39-1. Under this procedure, an inmate with a grievance about some event or issue must first make a good faith effort to resolve his concerns informally, verbally and then in writing on an informal complaint form. If dissatisfied with the response to that written form, the inmate may initiate the formal grievance procedure by filing a regular grievance within thirty days of the occurrence about which it complains. After investigation of the regular grievance, the warden or his designee will send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," to exhaust available remedies, the inmate must appeal that holding to Level II, and in some cases, to Level III.

According to the defendants' evidence, a review of Green Rock grievance records reflected that the grievances Sink filed to complain about the course of medical treatment

6

provided by Dr. Wang and the Green Rock medical staff in 2017 and 2018 did not mention

Davis, Herrick, or Amonette. Based on these records, Davis, Herrick, and Amonette argue that

Sink's claims against them should be dismissed for failure to comply with the exhaustion

requirement in § 1997e(a).

Sink admits that he never filed a grievance that mentioned Davis, Herrick, or Amonette

by name. He argues, however, that under § 1997e(a) and the VDOC grievance procedures, he

was not required to do so to fulfill the exhaustion requirement. The court agrees.

In Jones v. Bock, 549 U.S. 199, 218 (2007), the Supreme Court of the United States

rejected a court-imposed procedure providing that exhaustion under § 1997e(a) was not satisfied

unless the inmate had identified in his grievances each person later named as a defendant in his

lawsuit. The Court held that § 1997e(a) requires an inmate to

> complete the administrative review process in accordance with the applicable
> procedural rules,—rules that are defined not by [§ 1997e(a)], but by the prison
> grievance process itself. Compliance with prison grievance procedures, therefore,
> is all that is required . . . to properly exhaust. The level of detail necessary in a
> grievance to comply with the grievance procedures will vary from system to
> system and claim to claim, but it is the prison's requirements, and not
> [§ 1997e(a)], that define the boundaries of proper exhaustion.

Id.[3] (emphasis added). The VDOC grievance procedures do not include a provision requiring

that a grievance must name all participants in an incident or issue being grieved. Thus, for

VDOC inmates, "exhaustion is not *per se* inadequate simply because an individual later sued was

not named in the grievances." Id. at 219.

In this case, the administrative remedy forms and appeals that Sink filed about his

medical care at Green Rock described his condition, the treatment provided, and the reasons for

his dissatisfaction. His desire for someone to correct the situation and ensure that he received

---

[3] The court has omitted internal quotation marks, alterations, and citations here and throughout this
opinion, unless otherwise noted.

appropriate care in the future was clear.  See, e.g., Compl. Ex. 12, ECF No. 1-1 ("I want prompt medical attention.  I need to be seen for the condition I am in.").  Moreover, the regular grievances were processed by the warden's office, and the appeals were addressed to the Medical Services Director—Herrick's office.  See, e.g., Am. Compl. Ex. 12-14, ECF No. 21-1.  While the grievances and appeals do not name each of the defendants Sink has sued, that omission is not per se improper exhaustion under the VDOC's procedures.  The defendants do not offer any other basis for concluding that Sink did not properly exhaust as required under § 1997e(a) before filing this lawsuit.  For the reasons stated, the court will deny the motion for summary judgment.

### B.  The Motion to Dismiss by Dr. Wang and Nurse Autry.

A motion to dismiss tests the legal sufficiency of a complaint.  See Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007).  "[T]he complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face."  Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).  In conducting its review, a court must view the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  Id.  Sink is proceeding pro se and, thus, entitled to a liberal construction of his submissions.  See Erickson v. Pardus, 551 U.S. 89, 90-95 (2007).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).  An inmate's Eighth Amendment protections against cruel and unusual punishment include a right to the medical care necessary to address his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  Specifically, a prison official's "deliberate indifference to an inmate's

serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

The first part of this legal standard is objective. It requires showing that the inmate's medical condition is "serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. The second, deliberate indifference part of the standard is subjective. The plaintiff must show that the defendant knew of and disregarded an excessive risk to inmate safety or health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). It is not sufficient to show that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction. Jackson, 775 F.3d at 178.

1. Nurse Autry.

Taking Sink's allegations against this defendant as true, here are the facts in support of Sink's claim against this defendant. Nurse Autry was in charge of the medical unit when Sink came in on the morning of August 7, 2017. He was in a wheelchair, complaining of severe pain and an inability to walk or stand. After Sink was placed in the medical isolation cell, no medical staff member talked to him, physically examined him, or offered him any treatment for the pain that had prompted him to seek medical attention that day. Before Nurse Autry completed her shift, she did not ensure that Sink was evaluated to see if he had a need for immediate treatment of that pain. As a result, Sink did not receive any medical evaluation or treatment for his new pain until early the next morning.

At this stage of the litigation, the court concludes that Sink's allegations state an actionable § 1983 claim against Nurse Autry. Consistent with his allegations, he may be able to

show that his new and severe pain was obviously a serious medical need of which he informed Nurse Autry's staff. It is also reasonable to infer, and Sink may be able to show, that Nurse Autry personally knew about his medical complaints that day—from talking to her staff or reviewing their documentation of his admission to the unit, but she did not assess his condition, offer new pain relief of any type, or direct anyone else to do so. See Scinto v. Stansberry, 841 F.3d 219, 226 (4th Cir. 2016) ("[A] prison official's failure to respond to an inmate's known medical needs raises an inference of deliberate indifference to those needs."). The court will deny the motion to dismiss as to the claim against Nurse Autry.

2. Dr. Wang.

The majority of Sink's complaints about Dr. Wang's care do not support a finding of deliberate indifference, because the doctor provided treatment for the conditions with which he diagnosed Sink. The deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment or inadvertent failure to provide medical care, or mere disagreement concerning questions of medical judgment." Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) ("[T]he essential test is one of medical necessity and not simply that which may be considered merely desirable."). To establish the deliberate indifference required for an Eighth Amendment claim, a prisoner must present evidence showing "that a prison official actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). In other words, Sink must show that Dr. Wang knew Sink's neck pain and arm numbness were caused by pinched nerves and slipped discs.

10

Sink's evidence makes no such showing concerning events leading up to his surgery. At Dr. Wang's first examination of Sink for his neck and shoulder pain in July of 2017, the doctor diagnosed the symptoms as a pulled muscle and prescribed treatment for that condition. At the exam on August 8, 2017, Dr. Wang reaffirmed this diagnosis and ordered X-rays and medication. He also believed that Sink was exaggerating or faking some of his symptoms. When the X-rays showed degenerative, rather than acute, changes to Sink's neck, the doctor continued to believe the inmate was exaggerating his reports of pain at the August 17, 2017, examination. Nevertheless, at some point, the doctor ordered physical therapy for Sink, and in late August and September, Sink received therapy and the therapist's recommendation to restrict activities.

After the therapist reported that Sink's pain might be related to a pinched nerve, Dr. Wang saw Sink again on August 28, 2017, increased his pain medication, and requested approval for him to undergo an MRI, which was performed two weeks later. In the meantime, Sink continued to see the physical therapist and was advised to restrict activities. With the MRI results in hand, Dr. Wang advised Sink at the exam on September 25, 2017, that he might have a pinched nerve and referred him to see the neurosurgeon. While the appointments with the specialist were being arranged, Dr. Wang prescribed Flexeril, a muscle relaxer.

In summary, Dr. Wang did not ignore Sink's neck and shoulder pain. He rendered a diagnosis and provided treatment indicated by that diagnosis, including pain medication, X-rays, and physical therapy. When the pain continued and new evidence from the physical therapist entered the picture, Dr. Wang arranged for the MRI and then referred Sink to the specialist and surgery. Sink's self-serving layman's opinion that Dr. Wang should have suspected a pinched nerve and disc involvement sooner than he did is nothing more than a disagreement between

11

physician and patient that cannot support a finding of deliberate indifference. Sink also complains that Dr. Wang did not order the medication, Diclofenac, as recommended by the specialist. It is undisputed, however, that Dr. Wang was already providing Sink medication for pain and added Flexeril, a muscle relaxant that also blocks nerve pain.[4] This apparent professional disagreement between the specialist and Dr. Wang as to the choice of medications is "a classic example of a matter for medical judgment" that is, at worst, medical malpractice, not deliberate indifference. Estelle, 429 U.S. at 107.

Sink argues that the surgeon's comment—that he "couldn't stop" Sink's condition from happening, he "could only prevent it from progressing," proves that Dr. Wang's delays in ordering the MRI and referring him to the specialist somehow aggravated his neck and shoulder condition. The court cannot agree. At the most, this comment reminds Sink that doctors cannot fix some medical conditions.

For the reasons stated, the court concludes that Sink's allegations about Dr. Wang's course of treatment of his condition between July and December of 2017 do not support a finding of deliberate indifference. Therefore, the court will grant the motion to dismiss as to Sink's claims concerning this period. The court's finding that Dr. Wang was not deliberately indifferent to Sink's needs during this period also supports summary dismissal of Sink's claims against Davis, Herrick, and Amonette for failing to correct Dr. Wang's alleged violations of Sink's rights between July and December 2017. See 28 U.S.C. § 1915A(b)(1) (upon review of civil action filed by prisoner against governmental officers, court can summarily dismiss portions that are frivolous or malicious, or fail to state claim upon which relief may be granted).

---

[4] Flexeril (cyclobenzaprine) "works by blocking nerve impulses (or pain sensations) that are sent to [the] brain." *Drugs.com*, https://www.drugs.com/flexeril.html (last visited Feb. 24, 2020).

Liberally construing Sink's submissions, however, the court finds that Dr. Wang's alleged lack of response to Sink's post-surgical complaints in April and May of 2018 of pain while trying to sleep are sufficient to survive the motion to dismiss. Sink alleges that even after the neurosurgeon advised that a cervical pillow might alleviate that pain, Dr. Wang failed to provide the pillow or any alternative to address Sink's complaints of pain and trouble sleeping. As to these complaints, the court will deny the motion to dismiss.[5]

### III. Conclusion.

For the reasons stated, the court will deny the defendants' motion for summary judgment on the ground that Sink failed to exhaust administrative remedies before filing this action. The court will grant the motion to dismiss as to all claims against Dr. Wang for the course of treatment he provided to Sink between July and December of 2017, and summarily dismiss all such claims against defendants Davis, Herrick, and Amonette, pursuant to § 1915A(b)(1). The court will deny the motion to dismiss as the claim against Nurse Autry concerning events on August 7, 2017, and as to the claim against Dr. Wang concerning post-surgical complaints in April and May of 2018. An appropriate order will issue this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

**ENTER:** This _26th_ day of February, 2020.

_____
Senior United States District Judge

---

[5] The court notes that Sink's grievances about the cervical pillow were addressed first by the warden's office on Level I and then by the Medical Services Director. Am. Compl. Ex. 23-24, ECF No. 1-1.